# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MICHELLE W., | Case No.  1:20-CV-00572-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Pending is Petitioner Michelle W.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 18) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a fifty-three-year-old woman with a history of anxiety, depression, lower back injury, back pain, and leg pain.  AR[1] 16; *see also* Pt.'s Br. at 1 (Dkt. 18).  On October 27, 2017, Petitioner filed an application for social security disability income ("SSDI") as well as an application for supplemental security income ("SSI") alleging a disability onset date of September 3, 2015.  AR 14.  The claim was denied initially and on reconsideration and Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ").  *Id.*  On February 6, 2020,

---

[1] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 14).

**MEMORANDUM DECISION AND ORDER - 1**

the claim went to a hearing before ALJ Wynne O'Brien-Persons.  *Id.*  On February 25, 2020, the ALJ issued a decision that was unfavorable to Petitioner.  AR 11-29.

Petitioner appealed this decision to the Appeals Council.  The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.  AR 1-7.

Having exhausted her administrative remedies, Petitioner filed this case.  Petitioner raises five points of error.   First, Petitioner contends that the ALJ erred in determining that her degenerative disc disease of the lumbar spine did not qualify as presumptively disabling under Listing 1.04.  Pt.'s Br. at 5-9 (Dkt. 18).  Second, Petitioner maintains that the ALJ failed to provide clear and convincing reasons for discrediting her subjective symptom testimony.  *Id.* at 9-13.  Third, Petitioner argues that the ALJ erred in partially relying on the opinions of two medical professionals – Dr. Alicia Feldman and Dr. Rex Head – without sufficiently explaining which parts of the medical opinions were persuasive and which were not.  *Id.* at 13-16.  Fourth, Petitioner complains that the ALJ improperly adopted an RFC based on the ALJ's own lay assessment of the evidence, rather than the medical opinions.  *Id.* at 17.  Finally, Petitioner asserts that the ALJ erred at Step Five in accepting the vocational expert's testimony that someone with Petitioner's postural limitations could perform light work as an office helper, a rental clerk, and a parking lot attendant.  *Id.* at 18-20.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the

**MEMORANDUM DECISION AND ORDER - 2**

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable

**MEMORANDUM DECISION AND ORDER - 4**

impairment or combination of impairments, disability benefits are denied.  20 C.F.R.
§§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do

other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: post

lumbar fusion with right radiculopathy, cervical degenerative disc disease, major depressive

disorder, generalized anxiety disorder, post-traumatic stress disorder, and paranoid personality

traits.  AR 16.  The ALJ determined that these impairments affect Petitioner's ability to engage

in work-related activities in a variety of manners, including that Petitioner can never climb

ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs; must avoid all exposure

to hazards; and must have the ability to alternate positions every 30 minutes.  AR 19.  The ALJ

also determined that Petitioner's impairments limit her to "simple, routine tasks" with no "fast

production work."  *Id.*  Based on the testimony of a vocational expert (a "VE"), the ALJ

concluded that these limitations would prevent Petitioner from returning to her past work as a

certified nursing assistant ("CNA").  AR 27.  The ALJ found, however, that Petitioner's

limitations would not prevent her from performing an alternative range of light work, including

working as an office helper, a rental clerk, and a parking lot attendant.  AR 28.  The ALJ,

therefore, found that Petitioner was not disabled.  AR 29.

## DISCUSSION

I.  Listing 1.04

Petitioner's first argument on appeal is that the ALJ erred in concluding Petitioner's

degenerative disc disease did not meet or equal Listing 1.04(C).  Pt.'s Br. at 6 (Dkt. 18).  At the

time the ALJ issued his decision, Listing 1.04(C) directed that a spinal disorder was

presumptively disabling if it involved "[l]umbar spinal stenosis resulting in pseudoclaudication,

**MEMORANDUM DECISION AND ORDER - 6**

established by findings on appropriate medically acceptable imaging, manifested by chronic

nonradicular pain and weakness, and resulting in inability to ambulate effectively." 20 C.F.R.,

Pt. 404, Appendix 1 of Supt. P (2020).

As defined elsewhere in the Listings, the inability to ambulate effectively "means an

extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with

the individual's ability to independently initiate, sustain, or complete activities." *Id.* §

1.00(B)(2)(b)(1). Stated differently,

> [t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id.* § 1.00(B)(2)(b)(2).

This definition is "purposefully set at a high level of severity because 'the listings were

designed to operate as a presumption of disability that makes further inquiry unnecessary.'"

*Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S.

521, 532 (1990)). In essence, "[t]he listings define impairments that would prevent an adult,

regardless of his age, education, or work experience, from performing any gainful activity, not

just 'substantial gainful activity.'" *Zebley*, 493 U.S. at 532 (emphasis in original; citations

omitted). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Id.*

at 530 (emphasis in original).

**MEMORANDUM DECISION AND ORDER - 7**

It is the claimant's burden to make this showing.  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  This means it is Petitioner's burden to show that her back and leg issues prevented her from ambulating effectively.  *Id.*

The ALJ found that Petitioner had not met this burden.[2]  Specifically, the ALJ found that Petitioner "remains able to sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living, is able to ambulate without the use of a walker, two crutches, or two canes, and is able to walk a block at a reasonable pace on rough or uneven surfaces."  AR 17.

Petitioner asks the Court to reverse these findings based on Petitioner's reports to medical providers of having occasional falls and based on her own testimony that her morning routine takes her a while, she does not go on big shopping trips, and she can only walk halfway around a football field before needing a break.  Pt.'s Br. at 8-9 (Dkt. 21) (citing AR 52, 56-57, 500, 681).  While these statements and other evidence in the record indicate that Petitioner has some limitation in her ability to walk, they do not show that her ability to walk is extremely limited.  The record as a whole refutes any such claim.

First, Petitioner does not dispute the ALJ's finding that she walks without an assistive device, such as a walker, crutches, or a cane.  This undercuts Petitioner's position that her walking interferes "very seriously" with her ability to complete activities.  *Cf. Connors v. Colvin*, 656 F. App'x 808, 810 (9th Cir. 2016) (unpublished) (where the claimant only used a walker "at times," the claimant did not have an extreme limitation of the ability to walk).

---

[2] Petitioner briefly asserts that the ALJ did not evaluate her back issues under Listing 1.04(C).  Pt.'s Br. at 9 (Dkt. 18).  This is incorrect.  The ALJ expressly stated that he was considering Petitioner's degenerative disc disease under Listing 1.04.  AR 17.  As quoted above, the ALJ made specific findings about Petitioner's ability to ambulate within the meaning of 1.04(C)*.  Id.*

**MEMORANDUM DECISION AND ORDER - 8**

Second, aside from modest issues, such as a "slight limp," Petitioner's physical examinations routinely confirmed that Petitioner was able to walk.  AR 21 (citing AR 613-614) (despite a minor limp, Petitioner had a normal toe walk, heel walk, and tandem walk); *see also* AR 411 (Petitioner able to move about the exam room "freely," no evidence of antalgic gait; Petitioner able to tiptoe and able to heel walk); AR 451 (Petitioner displayed "abnormal" heel walking, but "normal" toe walking, "slow but normal" tandem walking, and "normal" retrograde walking); AR 683 (Petitioner able to walk on heels and toes "without much difficulty," able to perform a tandem in-line gait); AR 777 (Petitioner had discomfort and a "little bit" of giveaway in the hips when standing up, but was able to "walk fairly normal"); AR 658, 672, 675, 688, 834, 854 (Petitioner had a "normal gait").  In this regard, the medical record amply supports the ALJ's findings.  *Cf. Austin v. Saul*, 840 F. App'x 899, 901 (9th Cir. 2020) (medical records indicating that the claimant was able to walk "normally" showed that the claimant could ambulate effectively).

Finally, the ALJ correctly noted that Petitioner's difficulties with walking do not prevent her from carrying out many unassisted activities of daily living.  For example, Petitioner admits that she attends in-person college classes without companion assistance, takes care of her toddler-aged child, cleans up after herself and her child, prepares meals, does laundry, and goes out alone to shop.  AR 23-24 (referencing AR 43-44, 50, 307-308, 449, 687); *see also* AR 354 (Petitioner does her own laundry, makes her bed, performs light dusting, and sweeps the floor); AR 448 (Petitioner estimated that she could walk for 30 minutes at a time); AR 623 (Petitioner spends the day taking care of her granddaughter, does laundry, and leaves the home to go to the store and to visit family).  In addition to these routine activities, Petitioner has told medical providers that her leisure activities include golfing and attending a baseball game with her

**MEMORANDUM DECISION AND ORDER - 9**

toddler.  AR 23 (citing AR 687).  Taken together, these activities constitute strong evidence of Petitioner's ability to ambulate effectively.  *See Engelhardt v. Colvin*, 588 F. App'x 551, 552 (9th Cir. 2014) (unpublished) (discomfort walking did not establish an inability to ambulate effectively where claimant traveled without assistance to and from school, participated in household chores and childcare, and only used a cane two or three times a month for balance).

As this discussion shows, substantial evidence more than supported the ALJ's conclusion that Petitioner can ambulate effectively.  The Court, therefore, must affirm the ALJ's Listing analysis.  *See Tackett*, 180 F.3d at 1099-1100.

II. <u>Petitioner's Symptom Testimony</u>

Petitioner's second claim of error relates to Petitioner's credibility.  Pt.'s Br. at 9 (Dkt. 18).  According to Petitioner's testimony and written statements, Petitioner cannot work because her back injuries and degeneration cause her to be in "extreme pain all the time."  AR 46; *see also* AR 310 and 352.  Petitioner reports that this pain is accompanied by debilitating leg weakness, lack of focus, and fatigue.  AR 46, 312.  In addition to these issues, Petitioner alleges she experiences various mental health limitations, including anxiety, which independently keep her from working full-time.  AR 55.  Petitioner has averred that her impairments limit her attention span to 20 to 30 minutes.  AR 310, 357.

When evaluating the reliability of such testimony, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is

**MEMORANDUM DECISION AND ORDER - 10**

malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.*

Generalized findings will not satisfy this standard. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony . . ." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

The ALJ's decision satisfies these standards. Before rejecting Petitioner's symptom testimony, the ALJ provided valid, individualized reasons for finding Petitioner's claims about her pain and her mental health unconvincing.

Beginning with Petitioner's mental health, the ALJ found Petitioner's claim to suffer debilitating anxiety and depression inconsistent with the medical record and with Petitioner's activities of daily living. AR 22-23. Petitioner, notably, raises no challenge to this portion of the ALJ's decision. In other words, while Petitioner attacks the ALJ's credibility findings as they relate to her back pain and associated issues, Petitioner does not contest the ALJ's conclusion that Petitioner's mental health symptoms were not independently incapacitating and that Petitioner's testimony to the contrary was exaggerated.

The Court will turn immediately, therefore, to the ALJ's findings regarding Petitioner's back pain, leg pain, leg weakness, and associated fatigue and lack of focus. The ALJ identified the following reasons for rejecting Petitioner's claims about the severity and limiting effect of these symptoms: (1) the record overall showed that Petitioner was able to manage her low back

**MEMORANDUM DECISION AND ORDER - 11**

pain with medication, injections, and ablation procedures, (2) Petitioner's medical providers have

located no evidence of neurologic compromise, (3) Petitioner has not required surgery for her

ongoing back pain, (4) Petitioner has not required emergency room care or inpatient hospital

stays for acute exacerbations of pain, and (5) Petitioner has remained able to care for her toddler-

aged child and actively pursue an education in college during the period of alleged disability.

AR 22.

Petitioner takes issue with the first and fifth of these findings, which form the heart of the

ALJ's credibility findings regarding Petitioner's pain. Pt.'s Br. at 11-13 (Dkt. 18).[3]  As part of

this critique, Petitioner highlights the continuing and escalating treatment she has received over

the years for her back pain. *Id.* at 11. This is undoubtedly critical evidence. Asking the Court to

overturn the ALJ's credibility findings based on this evidence, however, overlooks the focused

and contained nature of the ALJ's adverse credibility findings. This is not a case where the ALJ

refused to accept that Petitioner had prior back injuries and back degeneration, resulting in

chronic back pain. AR 16, 20-22. To the contrary, the ALJ recognized Petitioner's back

---

[3] The Court agrees that second, third, and fourth reasons the ALJ provided would be insufficient standing alone to support an adverse credibility finding. *See*, *e.g.*, *Jordan v. Astrue*, 262 F. App'x 843, 845 (9th Cir. 2008) (unpublished) ("The fact that [the claimant] never required hospitalization or intensive treatment [for his back pain] . . . [is] not, on [it]s own, convincing reasons for disregarding his pain testimony.") and 20 C.F.R. § 404.1529(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). They were, however, legitimate factors for the ALJ to consider when assessing Petitioner's credibility as a whole. *See* 20 C.F.R. § 404.1529(c) (an ALJ evaluates a claimant's pain testimony by considering, among other things, the objective medical evidence, the claimant's daily activities, and any pain relief treatment the claimant has received); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (acknowledging that "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but stressing that "the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects").

**MEMORANDUM DECISION AND ORDER - 12**

conditions as severe, acknowledged that Petitioner was receiving treatment for chronic back

pain, and accurately outlined the nature of these treatments.  *Id.*  Based on this evidence, the ALJ

found that Petitioner would be significantly limited in her ability to work, including being unable

to complete strenuous physical activity or continue working as a CNA.  AR 16, 22, 27.  In other

words, the ALJ agreed that Petitioner experiences serious, ongoing, and restricting back pain.

In assessing Petitioner's credibility, therefore, the ALJ was not focused on whether

Petitioner had back pain, but on how severe this pain was and whether this pain prevented

Petitioner from engaging in any full-time work.  It is the reasonableness of these findings that the

Court must review on appeal.  *See Mullis v. Astrue*, No. CV 11-0542 JPR, 2012 WL 71708, at *6

(C.D. Cal. Jan. 10, 2012) ("the existence of some pain does not constitute a disability if it does

not prevent Plaintiff from working") (citing *Thorne v. Schweiker*, 694 F.2d 170, 171 (8th Cir.

1982)); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the social security program is

"intended to provide benefits to people who are unable to work; awarding benefits in cases of

nondisabling pain would expand the class of recipients far beyond that contemplated by the

statute.").

Here, the ALJ provided two reasons, which together form a clear and convincing

justification, for rejecting Petitioner's claim that her pain was so extreme it would prevent her

from working full-time.  First, the ALJ reviewed Petitioner's treatment record and found that

Petitioner had obtained significant, albeit not full or permeant, pain relief from several treatment

modalities.  AR 21-22.  For example, the ALJ pointed out that Petitioner reported receiving 50%

pain relief from facet joint injections in late 2016.  AR 21 (citing AR 467).  Similarly, in the fall

of 2018, Petitioner told her doctor that the injections she received in June relieved her low back

and radiating right leg pain for approximately two months.  AR 656 (referenced at AR 21).

**MEMORANDUM DECISION AND ORDER - 13**

Finally, in 2019, Petitioner informed her medical providers that she had "good success" with her most recent round of injections and had roughly 80% pain relief from ablation procedures.  AR 797 and 812 (referenced at AR 22).  The ALJ concluded that these records showed that Petitioner's treatments managed her pain better than Petitioner's testimony and reports would suggest.  AR 22.

This was not an irrational or unsupported conclusion.  Although Petitioner testified that she was in "extreme pain all the time," AR 46, multiple records, cited by the ALJ and outlined above, indicate that the regular and ongoing treatment Petitioner received provided her with substantial pain relief.  AR 467, 656, 797, 812.  The Court will not second-guess this aspect of the ALJ's credibility analysis.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).[4]

Second, Petitioner's activities of daily living strongly supported the ALJ's reading of the treatment record and the ALJ's adverse credibility findings.  Where, as here, a claimant's reported activities conflict with the claimant's description of the severity of her pain-related limitations, that is a clear and convincing reason for discounting a claimant's assertion of disability.  *See Bray v. Comm'r of Social Sec.,* 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Ghanim v.*

---

[4] Petitioner presents an alternative reading of the evidence, which stresses the deficiencies rather than the successes of her treatment regime.  Pt.'s Br. at 11 (Dkt. 18).  In affirming the ALJ's decision, the Court does not suggest that the medical record compelled the ALJ to discredit Petitioner.  As Respondent implicitly admits, reasonable minds may differ about the degree of conflict between Petitioner's treatment history and her allegations.  *See* Res.'s Br. at 6-7 (Dkt. 23).  Such disagreements are not a basis for reversal, however, as long as the ALJ's determinations are reasonable and supported by substantial evidence.  *See Jones v. Berryhill*, 720 F. App'x 851, 852 (9th Cir. 2017) (unpublished) (where an ALJ's credibility findings rest "upon a reasonable interpretation of the record," the court may not usurp these findings with on its own reweighing of the record).

**MEMORANDUM DECISION AND ORDER - 14**

*Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

In this case, Petitioner was the primary caregiver for a toddler, was actively pursuing a college education, and was continuing to golf during the period of alleged disability.  AR 22-23. The ALJ spent three paragraphs detailing and comparing Petitioner's various statements about these activities.  AR 23-24.  This discussion shows that although Petitioner downplayed her childcare responsibilities and school successes at the disability hearing, the ALJ reasonably found that the medical record revealed a more optimistic picture of Petitioner's functioning.  *Id.*

To start, it is undisputed that Petitioner has had care or custody of her toddler-aged granddaughter for the entire period of alleged disability.  AR 24, 48, 397, 411.  At the disability hearing, Petitioner testified that her ex-fiancé helped with the child's care from the child's birth until Petitioner and he split up in February 2018, when the child was two years old.  AR 49. Petitioner remained the sole caretaker for the child from that point until the disability hearing, when the child was four.  AR 48.  When asked if she performed "any physical care" for the child, however, Petitioner answered "No, she's pretty independent."  AR 48.  The ALJ reasonably discredited this testimony.  As the ALJ stressed, Petitioner's medical records clearly indicate that Petitioner took a hands-on role in caring for her granddaughter.  AR 411 and 449; *see also* AR 602, 605 (Petitioner continuing to care for her child alone after the end of her engagement) and AR 859 (Petitioner happy caring for her granddaughter).  This included getting the infant child ready to leave the house, bathing the infant, preparing snacks, handling bedtime, and caring for the child when the child was sick.  AR 449; *see also* AR 606 (Petitioner is raising her two-year-old granddaughter "who is very well cared for with all of her material and emotional needs being taken care of by [Petitioner]"); AR 623 (Petitioner "spends the day taking care of her

**MEMORANDUM DECISION AND ORDER - 15**

granddaughter"); AR 666 (Petitioner reported poor sleep and increased anxiety because her granddaughter had been sick for the last month).

Petitioner's childcare duties, thus, provided a double reason for the ALJ to doubt her credibility. Specifically, Petitioner's attempts to minimize her physical care for her grandchild raise questions about Petitioner's willingness to slant her testimony in order to obtain disability benefits. AR 24; *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid") and *Fair*, 885 F.2d at 604 n.5 (if a claimant "is found to have been less than candid in other aspects of [her] testimony, that may be properly taken into account in determining whether or not [her] claim of disabling pain should be believed"). In addition, Petitioner's ability to care for her granddaughter suggests a greater ability to function than Petitioner alleged. AR 22.

This is particularly true when Petitioner's childcare responsibilities are considered in conjunction with her other activities. In addition to caring for her granddaughter, Petitioner was taking college classes, both on-line and in person, for multiple semesters during the period of alleged disability. AR 23-24. According to Petitioner's own testimony, her course load generally measured six to nine credits, or two to three classes, a semester. AR 42-43.[5] At the

---

[5] On appeal, Petitioner emphasizes she was only attending college half-time. Pt.'s Br. at 12 (Dkt. 18). This overly simplifies Petitioner's enrollment history. According to Petitioner's testimony, 12 credit hours a semester is generally considered a full course load. AR 42. Petitioner was taking an average of six to nine credits, which is half time or more. In addition, the credit calculus changes during the summer. In June 2018, Petitioner told her doctor that she was taking nine credit hours over the summer semester, which was the equivalent of 18 hours of college credit for that term. AR 666.

**MEMORANDUM DECISION AND ORDER - 16**

time of the disability hearing, Petitioner was taking more than one class, including an in-person class that meet four hours a day three times a week. AR 43-44.  In describing how she was able to attend this class, Petitioner explained that she gets up every 20 to 30 minutes to change position. *Id.* Petitioner did not, however, indicate she had any other issues focusing or paying attention for the entire four-hour class. *Id.*

Petitioner's medical record indicates she was generally successful with her coursework.[6] AR 23-24; *see also* AR 662 (Petitioner receiving all A's in school); AR 859 (Petitioner averaging A's and B's as she entered her third semester); AR 845 (Petitioner "doing well" in school); AR 658 (Petitioner received "good grades" last semester); AR 854 (Petitioner passing all her classes).

Finally, on top of her familial and educational demands, Petitioner continued to engage in physically active leisure activities during the period of alleged disability, such as golfing and going to baseball games with her toddler.  AR 23 (citing AR 687); *see also* AR 731 (in August 2019, Petitioner reported knee pain to her doctor after going to the "driving range" the day before).

It was more than rational for the ALJ to conclude that these activities, taken together, conflicted with Petitioner's claim to be in such extreme back and leg pain "all the time" that she cannot hold down a full-time job and cannot focus for more than 20 to 30 minutes at a time.  *See Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability

---

[6] Petitioner stresses that she received accommodations from the school to frequently change position as needed.  Pt.'s Br. at 11-12 (Dkt. 18).  But the ALJ included similar work accommodations in the RFC.  AR 19 (permitting Petitioner to alternative positions every 30 minutes).

**MEMORANDUM DECISION AND ORDER - 17**

to work). Petitioner's insistence that these activities are not inconsistent with her testimony or with a claim of disability is simply an alternative reading of the record. Where, as here, the ALJ's interpretation of a claimant's activities is rational, that decision must be upheld even if the evidence of the claimant's reported activities "may also admit of an interpretation more favorable" to the claimant. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005). Petitioner's second argument on appeal, consequently, fails.

III. <u>The Medical Opinion Evidence</u>

a. *The Standard for Reviewing the Medical Opinion Evidence*

On January 18, 2017, the Social Security Administration published comprehensive revisions to its regulations governing the evaluation of medical evidence. *See* 82 Fed. Reg. 5844. These amendments apply to claims, such as Petitioner's, that are filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.

The new regulations set forth one uniform standard for evaluating all medical source opinions. *See* 20 C.F.R. § 404.1520c (The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). [7]

The lynchpin of this new standard is "persuasiveness." 20 C.F.R. § 404.1520c(a). When determining what medical opinions to credit, an ALJ evaluates how persuasive each medical opinion is by considering: (i) supportability, (ii) consistency, (iii) relationship with the claimant,

---

[7] Petitioner does not dispute that this new standard, not the old treating source rules, governs the evaluation of the medical evidence in this case. Pt.'s Br. at 13 (Dkt. 18). The undersigned agrees. *See Agans v. Saul*, No. 2:20-CV-00508 AC, 2021 WL 1388610, at *5–7 (E.D. Cal. Apr. 13, 2021) (finding that the new regulations are entitled to *Chevron* deference and that they displace the contrary, and pre-existing case law); *Carr v. Comm'r of Soc. Sec.*, No. 1:20-CV-00217-EPG, 2021 WL 1721692, at *2–5 (E.D. Cal. Apr. 30, 2021) (same).

MEMORANDUM DECISION AND ORDER - 18

(iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c)(1)-(5).

The parties differ on what standard of review the Court should apply, or perhaps what standard of articulation the Court should require of an ALJ, under these new regulations. Petitioner argues that the Court should continue requiring ALJs to provide "specific and legitimate" reasons for discounting the opinions of medical providers. Pt.'s Rply at 6 (Dkt. 24). Respondent contends that this standard is obsolete. Res.'s Br. at 8-9 (Dkt. 23).

It remains to be seen how the Ninth Circuit will resolve such disputes. The undersigned agrees with Respondent that the genesis of the "specific and legitimate" reasons standard provides a strong basis for questioning the continued applicability of the standard to the new regulations. *See Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983) (agreeing that treating physicians are entitled to greater weight and reasoning that an ALJ may not disregard their opinions, therefore, without providing "specific, legitimate reasons for doing so"). It is not clear, however, that the updated standard of review Respondent proposes is meaningfully different than expanding the "specific and legitimate" reasons standard to apply equally to all medical opinions (i.e., with no heightened rationale required to justify the rejection of an evaluating doctor's opinion) as Petitioner appears to be requesting. Respondent rightly acknowledges that, when complying with the new regulations, (i) an ALJ must still provide appropriate rationale for his conclusions and (ii) whatever reasons an ALJ does provide must be and supported by substantial evidence. Res.'s Br. at 9 (Dkt. 23). In other words, it is undisputed that an ALJ's decision must continue to satisfy metrics of both articulation and validity to survive review.

Distilling these requirements into a precise test is not necessary to resolve this appeal. For the reasons outlined below, the ALJ's treatment of the medical opinions survives review

**MEMORANDUM DECISION AND ORDER - 19**

under either Petitioner's "specific and legitimate" reasons standard or under Respondent's appropriate rationale and substantial evidence test.

      *b.  The Opinions of Dr. Alicia Feldman*

On September 3, 2015, the alleged disability onset date, Petitioner was involved in an on-the-job motor vehicle accident that retriggered her back pain.  AR 563-564.  After this accident Petitioner filed a worker's compensation claim and began receiving treatment from Dr. Alicia Feldman.  *Id.*; *see also* Pt.'s Br. at 14 (Dkt. 18).  Dr. Feldman saw Petitioner from September 23, 2015 until August 16, 2017.  *See generally* AR 425-566.

During this period, Dr. Feldman completed numerous worker's compensation reports and notes listing Petitioner's work status and limitations.  AR 462, 498, 510, 524, 536, 542.  Dr. Feldman, however, did not complete these forms in a consistent manner.  For example, in September 2015, Dr. Feldman initially recommended that Petitioner be restricted to "20lb lifting restrictions, no repetitive lifting, bending, twisting, not to exceed 4hrs/day."  AR 565.  Dr. Feldman continued this recommendation throughout the fall, but failed to document the restrictions in her November 2015 worker's compensation report.  *Compare* AR 546, 555, and 560 (continuing work status restrictions) with AR 542 (listing no restrictions on Petitioner's worker's compensation paperwork).

Then, in December 2015, Dr. Feldman completed a worker's compensation physician report indicating that Petitioner could return to modified duty with the following amended restrictions: "light duty, no lifting > 10 lbs," and "no prolonged sitting or standing."  AR 536.  In this report Dr. Feldman did not mention any restriction regarding the number of hours Petitioner could work.  *Id.*  Dr. Feldman kept Petitioner on these or similar restrictions for the next several months.  AR 520, 524.

**MEMORANDUM DECISION AND ORDER - 20**

In May 2016, after Petitioner reported worsening pain, Dr. Feldman filled out an updated form explicitly reinstating a limitation that Petitioner only work "4hours/day" light duty.  AR 506, 510; *see also* AR 25.  Dr. Feldman kept Petitioner on these half-time restrictions until January 2017.  AR 25, 477, 482, 488, 491, 498.  At this point, Dr. Feldman ordered a functional capacity evaluation to assess Petitioner's permanent restrictions.  AR 466.  Pending this evaluation, Dr. Feldman completed an interim physician's report which listed only one restriction: that Petitioner not lift more than 10 pounds.  AR 462.

In March 2017, Petitioner underwent the functional capacity evaluation, and the results were forwarded to Dr. Feldman.  AR 441.  Several months later, Dr. Feldman issued her final assessment releasing Petitioner to full-time work with a 10-20-pound lifting restriction and no prolonged sitting or standing.  AR 25, 427.

Petitioner argues that the ALJ failed to sufficiently indicate which parts of these opinions he was crediting and which he was not.  Pt.'s Br. at 14-15 (Dkt. 18).  This challenge is unpersuasive.  After reviewing the above history, the ALJ explained that he found Dr. Feldman's interim and evolving restrictions – which generally limited Petitioner to four hours of light duty per day – unpersuasive.  AR 25.  By contrast, the ALJ found Dr. Feldman's final opinion – that Petitioner could work full time with moderate lifting and postural restrictions – persuasive.  *Id.*

The ALJ provided rational and legitimate reasons for this determination.  Specifically, the ALJ stressed that Dr. Feldman's preliminary decision to limit Petitioner to four hours of work per day was based on Petitioner's subjective complaints, while Dr. Feldman's final opinion was issued after Petitioner underwent a comprehensive functional capacity evaluation.  *Id.*  In other words, the ALJ found that Dr. Feldman's interim reports were not supported by and not consistent with the objective medical findings, but the final report was so supported.  *Id.*  The

**MEMORANDUM DECISION AND ORDER - 21**

ALJ further found that Dr. Feldman's August 2017 opinion was more consistent with Petitioner's

activities of daily living than the earlier restrictions.  AR 25.  These were valid reasons, which

Petitioner had not challenged, for the ALJ to credit Dr. Feldman's final opinion, but not Dr.

Feldman's temporary work status reports and updates.  *See Bray*, 554 F.3d at 1228 (it is

reasonable for an ALJ to discount a physician's work restrictions when those restrictions are

based on a claimant's properly discounted subjective complaints) and *Morgan*, 169 F.3d at 602

(same); *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (conflict with a claimant's

reported activities is a specific and legitimate reason for refusing to accept a treating provider's

opinions).

   The only other challenge Petitioner raises regarding Dr. Feldman relates to Dr. Feldman's

final opinion recommending that Petitioner not engage in prolonged sitting or standing.

Petitioner argues that the ALJ wrongly assumed that this opinion meant that Petitioner only

needed to change position every 30 minutes.  Pt.'s Rply. at 6-7 (Dkt. 24).  This challenge falls

flat.  Where, as here, a doctor's opinion is susceptible of more than one interpretation, it is the

ALJ's responsibility to "translat[e] and incorporate[e] [the] clinical findings into a succinct

RFC."  *Rounds v. Comm'r SSA*, 807 F.3d 996, 1006 (9th Cir. 2015).  Petitioner makes no attempt

to show that the ALJ's translation of Dr. Feldman's sitting and standing limitation was

unreasonable.  Nor could she.  Petitioner herself indicated that she is able to sit and walk for

periods of up to 30 minutes at a time.  AR 43 (Petitioner usually gets up during class every 20 to

30 minutes); AR 52 (Petitioner can sit for 20 to 30 minutes); AR 448-449 (Petitioner estimates

she can walk 30 minutes, stand 20 minutes, sit 20-30 minutes, and drive 30 minutes); AR 485

(Petitioner completed a multiple-choice form indicating that she cannot sit for more than an hour,

**MEMORANDUM DECISION AND ORDER - 22**

and cannot stand for more than 30 minutes).  Petitioner has not established that the ALJ

committed any error in his treatment of Dr. Feldman's opinions, let alone harmful error.

      *c.*   *The Opinions of Dr. Rex Head*

     On April 7, 2018, Petitioner underwent a physical evaluation with consulting examiner

Dr. Rex Head.  AR 611.  After a comprehensive evaluation, Dr. Head found that Petitioner's

back conditions cause the following limitations:

> [S]he is limited to lift occasionally 10-20 lbs., lift frequently less than 10 lbs., lift constantly less than 10 lbs.[,] carry occasionally 10-20 lbs., carry frequently less than 10 lbs., carry constantly less than 10 lbs., sit less than 30 minutes at a time, sit 4-6 hours in an 8 hour work day, stand 30-60 minutes at a time, stand 4-6 hours in a 8 hour work day, walk less than 30 minutes on level ground, [and] walk 2-4 hours in a 8 hour work day.

AR 616.  Dr. Head also indicated that Petitioner had unspecified limitations with climbing,

stooping, bending, balancing, crawling, kneeling, crouching, exposure to cold, and traveling.  AR

616.[8]  The ALJ found this opinion only "somewhat" persuasive as it was (i) based largely on

Petitioner's subjective complaints, (ii) was not consistent with Dr. Head's own medical exam,

which revealed limited objective findings, (iii) was not supported by other objective evidence in

the medical record, including Dr. Feldman's August 2017 opinion releasing Petitioner to work

with only a 10-20 pound lifting restriction and no prolonged sitting or standing, and (iv) was

inconsistent with Petitioner's activities of daily living.  AR 26 (citing, among other things, AR

427).[9]

---

[8] There appears to be a word or words missing in Dr. Head's report.  At the end of the sentence listing how Petitioner is limited, Dr. Head wrote: "climbing, stopping, bending, balancing, crawling, kneeling, crouching, exposure to cold, and traveling" without any further explanation. AR 616.  The ALJ interpreted this as an opinion that Petitioner had some, indefinite limitations in these areas.  AR 26.

[9] These reasons appropriately focused on the supportability and consistency of Dr. Head's opinions as required by 20 C.F.R. § 404.1520c(b)(2).

**MEMORANDUM DECISION AND ORDER - 23**

Petitioner argues that this explanation was deficient because the ALJ did not list exactly which restrictions the ALJ found "persuasive" and which the ALJ was rejecting.  Pt.'s Br. at 16 (Dkt. 18).  The new regulations do not require this level of exegesis.  Under 20 C.F.R. § 416.920c(b)(1), an ALJ may address multiple opinions from a single medical source in one analysis.  20 C.F.R. § 416.920c(b)(1) (explaining that "voluminous case records" necessitate source-level articulation).  This approach accords with the Ninth Circuit's long-standing recognition that ALJs are not required to "draft dissertations when denying benefits."  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).   The touchstone for whether an ALJ has sufficiently explained his or her decision it not whether the ALJ conduct a line-by-line dissection of every medical opinion or piece of testimony offered by a claimant, but whether the reviewing court can reasonably follow the ALJ's reasoning and provide meaningful judicial review.  *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (internal citations omitted).

Here, the Court can reasonably discern what portions of Dr. Head's opinions the ALJ rejected by comparing Dr. Head's proposed restrictions to the RFC.  This simple comparison confirms that the RFC largely accords with Dr. Head's findings.  For example, the RFC limits Petitioner to "light" work.  AR 19.  This incorporates and aligns with Dr. Head's lifting and postural limitations.  *Compare* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.") and Social Security Ruling ("SSR") 83-10, 1993 WL 31251, at *5 (January 1, 1983) ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday") with AR 616.  The ALJ also included limitations in the RFC on

**MEMORANDUM DECISION AND ORDER - 24**

Petitioner's ability to climb, stoop, kneel, crouch, and crawl, as Dr. Head obliquely suggested. *Compare* AR 19 *with* AR 616.  Finally, the ALJ found that Petitioner would need to alternate positions every 30 minutes.  AR 19.  This was a reasonable translation of Dr. Head's opinion that Petitioner is limited to (i) standing 30-60 minutes at a time and (ii) sitting and walking for less than 30 minutes at a time.  *See* 20 C.F.R. § 404.1545(a)(1) (a claimant's RFC reflects "the most" the claimant "can still do despite" her limitations).

The only potential limitations that Dr. Head endorsed and that the ALJ did not include in the RFC were Dr. Head's suggestion that Petitioner has some, unquantified, limitations in her ability to bend, balance, travel, and be exposed to cold temperatures.  *Id.*  Petitioner has made no attempt to show that the ALJ erred in rejecting these vague and amorphous limitations.  Nor could she.

The ALJ provided valid reasons for finding Dr. Head's opinions as a whole only "somewhat" persuasive.  First, the ALJ found that these opinions were premised to a large extent on Plaintiff's previously discounted complaints and not any objective findings documented in Dr. Head's report.  AR 26.  This is a legitimate reason to discount an examiner's opinion about a claimant's physical conditions.  *Bray*, 554 F.3d at 1228.  In addition, the ALJ correctly noted that Dr. Head's opinions included more extensive limitations than those recommended in August 2017 by Petitioner's treating physician, Dr. Feldman.  AR 26 (citing AR 427).  This conflict provided additional, substantial evidence for rejecting those limitations endorsed by Dr. Head, but not noted by Dr. Feldman, such as Dr. Head's putative bending, balance, travel, and cold exposure limitations.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (where two medical opinions differ and are both based on "independent clinical findings," "it is then solely the province of the ALJ to resolve the conflict").

**MEMORANDUM DECISION AND ORDER - 25**

In summary, the ALJ appropriately considered the supportability and consistency of Dr. Feldman's and Dr. Head's largely similar opinions.  To the extent these opinions conflicted, the Court found Dr. Feldman's August 2017 work release the most persuasive and adopted an RFC consistent with this opinion.  This was a rational conclusion, which must be affirmed on appeal.

IV. The ALJ's Crafting of the RFC

Petitioner's fourth argument on appeal is that the ALJ improperly acted as his own medical expert in determining that Petitioner would only need to alternate positions every 30 minutes.  Pt.'s Br. at 17 (Dkt. 18).  At heart, this challenge is simply a restatement of Petitioner's attack on the ALJ's treatment the medical opinion evidence.  For the reasons already discussed, this attack fails.  The ALJ reasonably incorporated and synthesized Dr. Feldman's and Dr. Head's sitting, standing, and walking limitations into the RFC.  *See supra* Sections III(a) and III(b).  The ALJ was not required to phrase the RFC so that each postural limitation word-for-word matched a specific recommendation from one of the medical experts.  *See Rounds*, 807 F.3d at 1006 (the ALJ "translat[es] and incorporate[es] [the] clinical findings into a succinct RFC");  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.");  *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (rebuffing the suggestion "that the components of an RFC assessment lack substantial evidentiary support unless they [exactly] line up with an expert medical opinion").

V. The Vocational Expert's Testimony

Petitioner's final challenge on appeal is that the ALJ improperly accepted the VE's testimony that someone with Petitioner's postural limitations could perform light work as an office helper, a rental clerk, or a parking lot attendant.  Pt.'s Br. at 18-20 (Dkt. 18).  Petitioner

**MEMORANDUM DECISION AND ORDER - 26**

claims the ALJ was either required to find her disabled under the medical vocational guidelines

(the "Grids") without considering the testimony of VE, or, alternatively, to reject the VE's

testimony as unreliable and contradictory to the Dictionary of Occupational Titles (the "DOT").

These arguments do not accord with Supreme Court or Ninth Circuit law.

     *a.   The Grids*

     The Grids, which are applied at Step Five, provide "a short-hand method for determining

the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d

1111, 1114 (9th Cir. 2006). To use the Grids, an ALJ categorizes a claimant's physical-

exertional limitations, inputs a claimant's age, education, and previous work experience, and

finds whether the Girds direct of finding of "disabled" or "not disabled" for the correct

combination of factors. *Id.* The purpose of the Grids is to provide "consistency and uniformity

in decision-making." *Tommasetti*, 533 F.3d at 1044. "Under no circumstances, [therefore], may

a vocational expert's testimony supplant or override a disability conclusion dictated by the

[Grids]." *Lounsburry*, 468 F.3d at 1116. This does not mean, however, that the Grids will

control the disability determination in every case. Where a claimant has non-exertional

impairments or falls between exertional categories, the Grids may not apply. *Id.* at 1115

(explaining that the Grids only work where a claimant's functional limitations fall into certain

"standardized pattern[s]").

     Here, Petitioner points out that the Grids would have dictated a finding that she was

disabled if the ALJ had found she was limited to sedentary work. *See* Medical-Vocational

Guideline 201.14. By contrast, if Petitioner was able to perform a full range of light work, the

Grids would have mandated a finding that she was not disabled. AR 28; *see also* Medical-

Vocation Guideline 202.14. Seeking to take advantage of this dichotomy, Petitioner argues that

**MEMORANDUM DECISION AND ORDER - 27**

the postural restrictions the ALJ included in the RFC – allowing her to change positions every 30

minutes – should be treated as a limitation to "sedentary work," such that she is automatically

disabled under Medical-Vocational Guideline 201.14.  Pt.'s Br. at 19-20 (Dkt. 18).

This argument does not hold together under Petitioner's own reading of the record.

According to Petitioner, the RFC's postural accommodations required her to "spend half her

workday sitting, approximately four hours, and the other four hours standing or walking."  *Id.* at

18.  Even if Petitioner were correct about this interpretation, the RFC could not be classified as a

limitation to sedentary work.  "[A]t the sedentary level of exertion, periods of standing or

walking should generally total no more than about 2 hours of an 8-hour workday, and sitting

should generally total approximately 6 hours of an 8-hour workday."  SSR 83-10, 1993 WL

31251, at *5.  By comparison, "the full range of light work requires standing or walking, off and

on, for a total of approximately 6 hours of an 8-hour workday."  *Id.* at *6.  Petitioner claims that

she fell within these two ranges.

In such cases – i.e., "when a claimant's exertional limitation [falls] between two grid

rules" – the ALJ "fulfills his obligation to determine the claimant's occupational base by

consulting a vocational expert regarding whether a person with claimant's profile could perform

substantial gainful work in the economy."  *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th 2002).

The ALJ in this case properly followed this procedure, by calling an impartial VE to testify about

what jobs would be available to someone with Petitioner's unique postural and other non-

exertional limitations.

    *b.  Alternating Positions and the Dictionary of Occupational Titles*

At the disability hearing, the VE testified that someone with Petitioner's need to alternate

positions every 30 minutes would be precluded from certain light jobs, such as working as a

cashier.  AR 63.  The expert opined, however, that such a restriction would not prevent Petitioner

from working as an office helper, a rental clerk, or a parking lot attendant.  *Id.*  Petitioner claims

that the ALJ improperly credited this testimony without first reconciling the testimony with the

DOT.  Pt.'s Br. at 18-19 (Dkt. 18).

      The Court disagrees.  Petitioner's belief that the VE testimony conflicted with the DOT

hinges on a contrived interpretation of the RFC.  Specifically, Petitioner reads the RFC to require

that she rigidly switch back and forth from sitting to some other position every 30 minutes, such

that she sits exactly four hours a day and walks or stands the remaining four hours.  Pt.'s Br. at

18 (Dkt. 18).  This reading imports a (i) four-hour walking or standing limitation and (ii) a four-

hour sitting limitation into the RFC, that are not supported by the evidence, the ALJ's analysis,

or the wording of the RFC.

      As written, all the RFC provides is that Petitioner must "have the ability to alternate

positions every 30 minutes."  AR 19.  The RFC does not specify that every change must be from

or to a seated position, as opposed to switching from standing to walking.  Nor does it require

Petitioner remain seated for a full 30 minutes every time she switches to this position.  In other

words, the RFC does not treat sitting as the default position from which Petitioner must switch

back and forth.  Nor does it presume that Petitioner can only switch positions every 30 minutes

and not more frequently as the job demands.

      The record does not support reading these additional strictures into the RFC.  In adopting

the RFC, the ALJ indicated that he was crediting Dr. Feldman's August 2017 opinions and was

partially crediting (i) the results of Petitioner's March 2017 functional capacity evaluation and

(ii) Dr. Head's May 2018 physical evaluation.  AR 25-26.  None of these opinions limited

Petitioner to only standing or walking a combined four hours a day and only sitting for the

**MEMORANDUM DECISION AND ORDER - 29**

remaining four hours.  To the contrary, Dr. Head found that Petitioner could sit up to 4-6 hours a day, stand up to 4-6 hours, and walk up to 2-4 hours a workday, for a total amount of standing and walking between 6-10 hours.  AR 616.  Similarly, the March 2017 functional capacity evaluation states that Petitioner can tolerate frequent sitting and constant standing.  AR 26; *see also* AR 444.  Finally, Dr. Feldman found that Petitioner should not engage in "prolonged sitting or standing," without any limitation on Petitioner's ability to walk and without any cap on the absolute amount of time Petitioner can sit or stand in a day.  AR 427.  These opinions, and the ALJ's translation of them into the RFC, fall well within the requirements for light work.  *See* SSR 83-10, 1993 WL 31251, at *5.

There was, consequently, no "obvious or apparent" difference for the ALJ to resolve when assessing the reliability of the VE's testimony.  *See Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).  (for a difference between an expert's testimony and the DOT to require addressing, it must be "obvious or apparent"); *see also Dewey v. Colvin*, 650 F. App'x 512, 514 (9th Cir. 2016) (unpublished) (finding the VE's testimony did not conflict with the DOT because the DOT was "silent on whether the jobs in question allow for a sit/stand option").

In the alternative, to the extent the VE's testimony about alternating positions can be considered to conflict with the DOT's definition of light work, the ALJ reasonably resolved the conflict by relying on the VE's experience and knowledge to fill in the gaps in the DOT.

While the DOT raises a presumption as to job classification requirements, this presumption is rebuttable.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may rely on VE testimony that conflicts with the DOT so long as there is "persuasive" testimony to support the deviation.  *Id*.  This is not a demanding standard.  "Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict."  SSR 00-4p, 2000 WL 1898704, at *2

**MEMORANDUM DECISION AND ORDER - 30**

(December 4, 2000).  Instead, it is the responsibility of the ALJ to resolve the conflict by asking the expert to explain the variance and then determining "whether the [VE's] explanation for the conflict is reasonable."  *Zavalin*, 778 F.3d at 846.

Here, the VE averred that her testimony about alternating positions supplemented the DOT and was based on her "background and experience."  AR 64.  The ALJ reasonably credited this testimony in the face of (i) the DOT's broad and inexact exertional classifications and (ii) the DOT's silence regarding the frequency and availability of postural changes in various lines of work.

"To determine the physical exertion requirements of work in the national economy," the Social Security Administration and the DOT classify all jobs as sedentary, light, medium, heavy, or very heavy.  20 C.F.R. § 404.1567.  Here, Petitioner construes the RFC in manner that is incompatible with her performing work in any of these classifications.  Specifically, Petitioner insists that she can only sit for four hours a day and stand or walk for four hours a day.  Pt.'s Br. at 18 (Dkt. 18).  Even if the Court were to adopt this reading of the RFC, the inevitable mismatch between these limitations and the DOT's standardized exertional categories constituted a persuasive reason for the ALJ to rely on VE testimony.  *Avilez v. Berryhill*, 677 F. App'x 373, 374 (9th Cir. 2017) (unpublished) (the ALJ's reasonably relied on vocational testimony about what jobs a petitioner could do when the petitioner's RFC fell between the categories of light and sedentary work).

This is because it is a matter of common sense that not all jobs require either exactly six hours of walking or six hours of sitting and nothing in between.  In other words, the DOT does not comprehensively detail the exact postural requirements of all jobs in the national economy.  As the Ninth Circuit has stressed, the DOT refers to occupations, not to specific jobs.  *Gutierrez*,

**MEMORANDUM DECISION AND ORDER - 31**

844 F.3d at 807. "'Occupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" *Id.* In recognition of this fact, the Ninth Circuit frequently permits ALJs to rely on a VE's particularized professional experience to justify a deviation from or supplementation to the generalized information contained in the DOT. *See*, *e.g.*, *Hunter v. Astrue*, 254 F. App'x 604, 606 (9th Cir. 2007) (unpublished) (where the DOT classified a security guard as a semi-skilled position, the ALJ "properly relied on the VE's testimony that in his experience, not all security guard jobs required extensive writing skills"); *Gump v. Comm'r*, 222 F. App'x 553, 555 (9th Cir. 2007) (unpublished) (finding the VE's testimony about how the local economy differed from the DOT persuasive, where the testimony was based on the expert's "experience and knowledge"). This includes repeatedly affirming ALJ reliance on VE testimony regarding sit-stand options and other postural alterations that the DOT does not specifically discuss. *See*, *e.g.*, *Avilez*, 677 F. App'x at 374; *Dewey*, 650 F. App'x at 514; *Buckner-Larkin v. Astrue*, 450 F. App'x 626 (9th Cir. 2011) (unpublished) (accepting the VE's testimony that certain sedentary jobs allow for an at-will sit/stand option); *Loop v. Colvin*, 651 F. App'x 694, 696-697 (9th Cir. 2016) (unpublished) (the ALJ properly relied on the VE's testimony that "allowing a sit/stand option is commonplace in call center workplaces, and this is how the call center job is generally performed in the national economy").

Treating VE testimony about such postural requirements or about claimants who fall between exertional categories as inherently untrustworthy, as Petitioner asks, would subvert the substantial evidence standard and conflict with recent Supreme Court precedent. *See Ford*, 950 F.3d at 1159 (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (a VE's qualifications, cogent testimony, and recognized expertise generally suffice to "handily" clear the substantial

**MEMORANDUM DECISION AND ORDER - 32**

evidence bar).  Here, the ALJ properly inquired about conflicts with the DOT, acknowledged

that the VE's testimony about Petitioner's postural limitations supplemented the DOT, and

reasonably elected to credit this testimony.  AR 28-29.  Nothing more was required.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of

Petition to Review (Dkts. 1 & 18) are **DENIED,** and the decision of the Commissioner is

**AFFIRMED.**

DATED: June 06, 2022

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 33**